1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT J. DUSTMAN, | ) 1:04cv6177 DLB |
| | ) |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| | ) |
| JOANNE B. BARNHART, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Robert J. Dustman ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On March 4, 2005, the Honorable Anthony W. Ishii reassigned the case to the undersigned for all purposes.

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for disability insurance benefits on May 5, 1999.  AR 157-160.  He alleged that he had been disabled since May 4, 1999, due to heart disease.  AR 188.  After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 112-115, 118-121, 122.  On November 13, 2000, ALJ Lyons held a hearing, and on December 28, 2000, denied benefits.  AR 504-530, 85-93.  On April 25,  2001, the Appeals Council remanded the case for further proceedings.  AR 137-139.

On March 29, 2002, a second hearing was held before ALJ Baker.  AR 530-554.  He denied benefits on May 22, 2002.  AR 97-105.  On October 9, 2002, the Appeals Council again remanded the case for further proceedings.  AR 109-111.

On September 13, 2003, a third hearing was held before ALJ Lyons.  AR 555-587.  ALJ Lyons denied benefits in his decision dated December 23, 2003.  AR 38-48.  On August 4, 2004, the Appeals Council denied review.  AR 8-10.

Hearing Testimony

On September 13, 2003, ALJ Lyons held a hearing in Bakersfield, California.  AR 555.  Plaintiff appeared with his attorney, Joshua Potter.  AR 555.  Vocational expert ("VE") Ken Ferra also appeared, but did not testify.

Plaintiff testified that he was 47 years old at the time of the hearing.  AR 559.  He lives with his wife, who is not employed.  AR 559.  He completed high school and had three years of college.  AR 559.  He has a driver's license and drove himself to the hearing.  AR 559.  He last worked as a material manager for a chemical manufacturing plant.  AR 559.

Plaintiff explained that he had a myocardial infarction in 1998 and then had angioplasty.  AR 561.  In 1999, he had a surgical procedure to clean out the stent.  AR 561.  He takes nitroglycerin, on average, about once a month.  AR 562.  He has not required emergency room treatment for his heart in the last two years, but has been to the emergency room for back spasms.  AR 562-563.  His blood pressure and cholesterol are controlled with medication.  AR 563.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff testified that he was 6' 2" and weighed about 400 pounds. AR 563. He has gained about 50 pounds since his heart attack. AR 564. His doctor has not put him on an exercise program, but tells him to walk. AR 564. Plaintiff tries to walk as much as he can, and estimated that he could walk about half a block. AR 564. He explained that he has a tremendous amount of pain in his lower extremities and that his left foot hurts all the time. AR 564. The pain varies in intensity, and about one in ten times, he can't bear weight on his foot. AR 582. It takes about three hours of laying down with his foot elevated before the pain goes away. AR 583. Standing or walking too long also causes foot pain. AR 583. He gets most of his exercise by following around his self-propelled lawnmower, and although he walks with his wife on occasion, it is never more than a block. AR 564. When he mows his lawn, he has to take breaks because of his leg. AR 565. His doctors have not put him on a diet but have expressed concern about his weight. AR 565. Other than his medications, he receives no other types of treatment. AR 565. Plaintiff explained that arteriosclerosis causes the pain in his left foot. AR 565. He has had anxiety for several years. AR 573. He also suffers from shortness of breath. AR 575.

Plaintiff testified that he has a very dull life. AR 566. He gets up in the morning, and if he is going to do any activity, he does it between 7:00 and 9:30 a.m. AR 566. He lays down more than he sits or stands. AR 566. He likes to read military history and is able to work on the computer in small doses. AR 567. Using the computer for more than 45 minutes gives him episodes of chest pain due to "stress." AR 568. Even opening the mail can cause chest pains due to stress over financial matters. AR 581. He takes out the trash when he can, and "piddles" around the yard and does a little yard work. AR 568. He can also do small mechanical things, like change a light bulb. AR 568. His wife does everything else. AR 568. He and his wife go out to socialize once or twice a month, but Plaintiff cuts it short because he is exhausted and wants to return home. AR 574. He accompanies his wife on errands about twice a month and he sits in the car. AR 576.

When questioned by his attorney, Plaintiff explained that he mows his lawn once a week. AR 568. It takes him one day to mow the front yard and one day to mow the back. AR 569. He gets chest pain with stressful activities, such as standing, walking and lifting. AR 569. He can't

3

do anything requiring lifting.  AR 569.  He lives in a three-story house.  AR 569.  If he's having a bad day, he will stay on the middle level because he cannot climb the stairs.  AR 569.  On a bad day, his chest pains "tremendously" and he lays on the couch.  AR 570.  Sometimes he doesn't leave his bedroom for the day.  AR 570.  This happens two to three times per week.  AR 570.  He is unable to leave his house every day because he doesn't have the energy.  AR 571.

Plaintiff explained that his chest pain feels like someone is standing on his chest.  AR 572.  The episodes sometimes last only 30 seconds and sometimes last until it is eliminated by a treatment, or about five minutes.  AR 572.  After his episodes, fear keeps him from resuming his normal routine.  AR 572.  His symptoms have been essentially unchanged since 1999.  AR 573.

He does not believe that he could work because he could not show up for five days a week, eight hours per day, because of his chest pain.  AR 577.  Once he has an episode, he is done for the day.  AR 578.  The chest pain radiates down his arms and he has discomfort under his jaw.  AR 578.  Depending on the severity of the pain, he will ask his wife to get his pills or make him a "drink."  AR 579.  After the pains go away, he is so fatigued that he lays down for the rest of the day.  AR 579.

Plaintiff also experiences chest pain while driving.  AR 579.  Other than going camping every now and then, he puts about 2000 miles per year on his car.  AR 580.

He thought he could sit, without elevating his feet, for about an hour.  AR 584.  When asked how he was able to sit at the hearing with his feet down, Plaintiff immediately indicated that he needed to move around.  AR 584.

Plaintiff stopped smoking two months ago.  AR 585.  He stopped drinking two years ago.  AR 586.

Medical Record

On February 10, 1998, Plaintiff had an acute myocardial infarction.  AR 291.  He was admitted to Bakersfield Memorial Hospital and underwent emergency angioplasty.  AR 289.  He was discharged on February 14, 1998, in stable condition.  AR 288.

_____On February 26, 1998, Plaintiff underwent testing that revealed significant coronary artery disease.  AR 248.

1    On March 31, 1998, Plaintiff underwent angioplasty and stent placement in his right

2  coronary artery.  AR 266.  The procedure was successful.  AR 266.

3    In June 1998, Plaintiff complained of chest pain and left extremity weakness.  AR 276.

4  An exercise treadmill test performed on June 9, 1998, revealed an excellent exercise capacity.

5  AR 328.

6    On April 13, 1999, Plaintiff underwent a stress test that revealed evidence of ischemia in

7  the inferior wall, which suggested possible right coronary artery restenosis.  AR 322.

8    On May 21, 1999, Plaintiff was admitted to Bakersfield Memorial Hospital for placement

9  of a second stent in his right coronary artery.  AR 280-281.  His discharge diagnoses were angina

10  pectoris, coronary artery disease and arteriosclerotic heart disease.  AR 282.  He was discharged

11  in stable condition.  AR 282.

12    On June 10, 1999, Plaintiff indicated to his treating physician, Kirit R. Desai, M.D., that

13  he was feeling well except for pain in his left elbow.  AR 319.  He was advised to return in two

14  months.  AR 319.

15    On June 24, 1999, State Agency physician Arthur Jing, M.D. completed a Physical

16  Residual Functional Capacity Assessment form.  AR 63.  He opined that Plaintiff could

17  occasionally lift/carry 20 pounds, 10 pounds frequently, stand and/or walk about six hours in an

18  eight hour workday, and sit about six hours in an eight hour workday, and was unlimited in his

19  ability to push and pull.  AR 64.  Plaintiff had to avoid concentrated exposure to extreme cold

20  and heat and hazards.  AR 67.

21    On August 26, 1999, Plaintiff saw Dr. Desai and complained of burning and indigestion.

22  AR 318.  He was advised to stop smoking and file for permanent disability because of his

23  recurrent anginal pain and significant coronary artery disease.  AR 318.  Dr. Desai recommended

24  treadmill testing for further evaluation of his chest pain.  AR 318.

25    On October 11, 1999, Dr. Desai wrote a letter to Plaintiff's attorney.  AR 316.  He listed

26  Plaintiff's medical problems as refractory angina pectoris, chronic ischemic heart disease,

27  atherosclerotic heart disease and previous myocardial infarction, hyperlipidemia, and obesity.

28

1   AR 317.  Dr. Desai advised Plaintiff that he was permanently disabled, and advised him to stop

2   smoking, lose weight, and avoid heavy exertional activities.  AR 317.

3   　　On October 21, 1999, Plaintiff underwent an exercise tolerance test.  AR 292.  Plaintiff

4   did not have any cardiac dysrythmias but complained of chest pain at the end of the test.  AR

5   292.  The test was negative for exercised induced myocardial ischemia.  AR 292.

6   　　On November 23, 1999, State Agency physician Edwin G. Wiens, M.D. completed a

7   Physical Residual Functional Capacity Assessment form.  AR 77.  He opined that Plaintiff could

8   occasionally lift/carry 20 pounds, 10 pounds frequently, stand and/or walk about six hours in an

9   eight hour workday, and sit about six hours in an eight hour workday.  AR 78.  He could

10  occasionally climb and had to avoid concentrated exposure to extreme cold and heat .  AR 81.

11  Dr. Wiens noted that Plaintiff's subjective allegations were not supported by his performance on

12  a recent stress test.  AR 82.

13  　　A December 30, 1999 exercise tolerance test was negative for exercise-induced

14  myocardial ischemia.  AR 473.

15  　　On January 18, 2000, Plaintiff saw Dr. Desai and complained of chest pain that was

16  relieved by burping.  AR 471.  Dr. Desai advised Plaintiff to stop drinking beer.  AR 471.

17  　　On April 28, 2000, Plaintiff was evaluated by board-certified internist Robert M. Gromis,

18  M.D.  AR 337.  Plaintiff described his work-related stress and indicated that he returned to work

19  about a month after his February 1998 heart attack.  AR 347.  Plaintiff continued to work until

20  January 15, 1999, when he was terminated due to down-sizing.  AR 354.  Plaintiff complained of

21  stress, tension, anxiety, difficulty sleeping, headaches, bowel movement irregularity, and

22  heartburn.  AR 356.  Dr. Gromis opined that, despite Plaintiff's heart attack, there was "no

23  evidence of any significant left ventricular dysfunction and . . . he appears to have normal left

24  ventricular function at rest and after exercise."  AR 264.  Dr. Gromis opined that Plaintiff's chest

25  pain was non-cardiac in origin and could be associated with gastroesophagitis reflux.  AR 364.

26  Dr. Gromis concluded that Plaintiff was not disabled and that his major factor was related to

27  inactivity and morbid obesity.  AR 365.  He indicated that Plaintiff would be restricted to light

28  work and should avoid more than ordinary amounts of emotional stress.  AR 376.  From an

1   internal medicine cardiovascular standpoint, he described Plaintiff as having a moderate

2   disability.  AR 376.

3       On May 4, 2000, Plaintiff underwent a treadmill test that was negative for exercise-

4   induced myocardial ischemia.  AR 467.

5       On June 14, 2000, Dr. Gromis confirmed his earlier findings in a supplemental report.

6   AR 331-336.

7       On September 21, 2000, Dr. Desai wrote a letter to Plaintiff's attorney and indicated that

8   he "sincerely believe[d]" that Plaintiff's cardiac symptoms were aggravated by his obesity, which

9   contributes to his incapacity for sustained work.  AR 379.

10      On November 14, 2000, Plaintiff told Dr. Desai that he had occasional chest pains and

11  was very fatigued and tired.  AR 383.  He advised Plaintiff to stop smoking, walk regularly, and

12  lose weight.  AR 383.

13      Plaintiff saw Dr. Desai on March 19, 2001, and complained that he was very fatigued and

14  tired.  AR 382.  He was advised to stop smoking and to return in two months.  AR 382.

15      On May 18, 2001, Plaintiff saw Dr. Desai and indicated that he was feeling better but was

16  still smoking.  AR 381.  He was advised to continue his current medications, stop smoking, and

17  return in three months.  AR 381.

18      On May 31, 2001, a State Agency physician completed a Physical Residual Functional

19  Capacity Assessment form.  AR 456.  The physician opined that Plaintiff could occasionally

20  lift/carry 20 pounds, 10 pounds frequently, stand and/or walk at least two hours in an eight hour

21  workday, and sit about six hours in an eight hour workday.  AR 457.

22      On June 18, 2001, in a letter to Plaintiff's attorney, Dr. Desai indicated that Plaintiff's

23  morbid obesity causes aggravation of his underlying atherosclerotic heart disease and

24  hypertension.  AR 380.  Because of his morbid obesity, Dr. Desai indicated that Plaintiff was

25  totally disabled.  AR 380.

26      On July 24, 2001, Plaintiff was examined by Ashok Behl, M.D.  AR 435.  He noted that

27  Plaintiff's electrocardiogram was normal.  AR 436.  He diagnosed angina pectoris occurring on

28  exertion and during stressful situations, exertional dyspnea, possibly secondary to underlying

arteriosclerotic heart disease, previous myocardial infarction, hypertensive cardiovascular disease and obesity, chronic hypertension with hypertensive cardiovascular disease, hyperlipidemia and obesity. AR 436-437. He stated that Plaintiff "seem[ed] to be limited in his activities because of the patient's symptoms of exertional fatigue, exertional dyspnea and exertional chest pains as well as chest pains brought on during stressful situations." AR 437.

On July 24, 2001, Dr. Behl completed a Medical Source Statement and opined that Plaintiff's impairment affected his ability to lift/carry, stand/walk and push/pull. AR 430-431. He also indicated that Plaintiff should have limited exposure to extreme temperatures, dust, humidity/wetness, hazards, fumes, odors, chemicals and gases. AR 433.

On January 15, 2002, Dr. Desai completed a Functional Capacities Evaluation and opined that Plaintiff could sit for two hours, stand for two hours, and walk for one hour in an eight hour workday. AR 498. He could never bend, squat, or crawl, but could occasionally climb and reach above shoulder level. AR 498. He could occasionally lift and carry up to 10 pounds. AR 498.

On April 11, 2003, Lakhjit Sandhu, M.D., examined Plaintiff. AR 499. Dr. Sandhu noted that Plaintiff had multiple medical problems (angina pectoris, hypertension, hypercholesterolemia, smoking, and history of myocardial infarction, angioplasty and stent placement) and needed to lose weight and stop smoking. AR 500. Due to lack of insurance, Plaintiff could not receive treatment to rule out right coronary artery restenosis. AR 500. Dr. Sandhu "suggested that the patient may be given one year of disability and during this time he should be able to get his medical treatment and possibly angiography, and, if indicated, coronary intervention." AR 500. If Plaintiff could not get proper treatment and was unable to lose weight, he may "need permanent disability." AR 500.

On August 28, 2003, Dr. Desai wrote a letter explaining that because of his cardiac condition, which is aggravated by his morbid obesity, Plaintiff should be considered disabled and should be granted disability benefits. AR 502.

ALJ's Findings

The ALJ determined that Plaintiff suffered from the severe impairments of heart disease and obesity. AR 42. The ALJ found Plaintiff's subjective complaints not as severe as alleged.

8

AR 45.  He determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 10 pounds frequently and occasionally, to sit continuously, and to occasionally stand and/or walk.  AR 42.  Plaintiff had to avoid stressful situations.  AR 42.  Although he could not perform his past work, he could perform a wide range of sedentary work.  AR 46.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

1  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

2  Cir. 1990).

3      In an effort to achieve uniformity of decisions, the Commissioner has promulgated

4  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

5  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  Applying this process in this case, the ALJ

6  found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

7  disability; (2) has an impairment or a combination of impairments that is considered "severe"

8  (severe coronary artery disease and obesity) based on the requirements in the Regulations (20

9  CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which

10 meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4;

11 (4) cannot perform his past relevant work; (5) but retains the RFC to perform a significant

12 number of jobs in the national economy.  AR 46-47.

13      Plaintiff argues that (1) new evidence warrants remand; (2) the ALJ failed to consider

14 Plaintiff's obesity; (3) the ALJ erred in finding that Plaintiff's impairments did not meet or equal

15 a listing; (4) the ALJ failed in his duty to develop the issues; (5) the ALJ erred in his credibility

16 analysis; (6) the ALJ erred in rejecting the treating physicians' opinions; and (7) the ALJ erred in

17 his RFC finding.

18                                              **DISCUSSION**

19 A.    New Evidence

20 _____Plaintiff attaches three exhibits to his opening brief and argues that the documents

21 constitute new evidence and warrant remand.  The three documents are (1) a November 3, 2004,

22 consultive psychiatric examination conducted by Shailesh C. Patel, M.D.; (2) a weighmaster

23 certificate dated January 8, 2005 indicating that Plaintiff was weighed at the Beacon Truck Stop;

24 and (3) Dr. Desai's weight report dated January 10, 2005, indicating that Plaintiff weighed 400

25 pounds when weighed at the Beacon Truck Stop.

26

27

28

[3] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

1    Pursuant to the provisions of 42 U.S.C. § 405 (g), as amended in 1980, a case may be

2   remanded to the Secretary if the new evidence submitted is material, and there is good cause for

3   the failure to incorporate it into the record.  In order to be "material," the new evidence must be

4   probative of the claimant's condition as it existed during the relevant time period -- on or before

5   the administrative hearing. *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509,

6   511 (9th Cir. 1987).  In addition, the claimant must prove to the reviewing court's satisfaction

7   that there exists a "reasonable possibility that the new evidence would have changed the outcome

8   of the Secretary's determination had it been before him." *Booz v. Secretary of Health and Human*

9   *Services*, 734 F.2d 1378, 1380 (9th Cir. 1984).  The good cause requirement is satisfied if the

10   claimant could not have obtained the medical evidence at the time of the administrative

11   proceeding, even though the evidence surfaces after the Secretary's final decision. *See Embry v.*

12   *Bowen*, 849 F.2d 418, 423-24 (9th Cir. 1988); *Booz*, *supra*, 734 F.2d at 1380.

13    1.    *Dr. Patel's Report*

14    Plaintiff states that his counsel received the report, by fax, on December 21, 2004.  He

15   explains that the consultive examination was obtained by the Commissioner for his April 4,

16   2001, application.  The ALJ considered the April 4, 2001, application to be a duplicate

17   application and associated it with the instant claim file.  AR 41.

18    Plaintiff first argues that the report is already associated with the file.  While Plaintiff's

19   April 4, 2001, application may indeed be "associated" with this file, the examination was

20   conducted in November 2004, well after the ALJ's December 23, 2003, decision and the Appeal

21   Council's denial of review in August 2004.  The report therefore does not address Plaintiff's

22   mental state during the relevant period of his disability insurance benefits application. *See Bates*

23   *v. Sullivan*, 894 F.2d 1059 (9th Cir. 1991) (overruled on other grounds) (upholding the

24   Commissioner's decision that new evidence was not relevant to the period in question when it

25   was submitted two months after the ALJ's decision, and over two years after claimant's date last

26   insured).

27    Plaintiff next argues that the report meets the standards for remanding an action based on

28   new medical evidence.  Plaintiff points to his GAF score of 45-50 and argues that this score

1  indicates that Plaintiff cannot be expected to perform substantial gainful activity at any level for

2  five days a week, eight hours per day.  In addition to not being material because it does not relate

3  to the relevant time period, there is no reasonable possibility that the report would have changed

4  the outcome of the Secretary's determination had it been before him.  Indeed, the report indicates

5  that despite Plaintiff's GAF score, he has the ability to interact with others and has the ability to

6  understand, remember and carry out simple instructions.  Exhibit A, attached to Opening Brief, at

7  3.  Moreover, his attention and concentration were good during the evaluation.  *Id.*

8        The November 2004 report is not material and does not warrant remand.

9        2.      *Evidence of Plaintiff's Weight*

10       The remaining two exhibits, which demonstrate that Plaintiff's weight was 400 pounds in

11  January 2005, are not material and do not warrant remand.  As Defendant points out, the

12  evidence is cumulative and the Commissioner does not dispute Plaintiff's obesity.  Thus, there

13  exists no reasonable probability that this evidence would have changed the Commissioner's

14  determination.  Moreover, a person's weight in January 2005 is not necessarily indicative of his

15  weight prior to December 23, 2003.

16  B.    Plaintiff's Obesity

17       Plaintiff argues that the ALJ failed to consider the impact of his obesity, in combination

18  with his other impairments, on his ability to work.  Defendant concedes that Plaintiff is obese and

19  that SSR 02-01p controls this analysis.

20       Pursuant to SSR 02-1p, obesity must be considered throughout the sequential evaluation

21  process, including when determining an individual's RFC.  "The combined effects of obesity

22  with other impairments may be greater than might be expected without obesity."  SSR 02-1p.

23  The Ninth Circuit recently held that, pursuant to SSR 02-1p, the ALJ must consider obesity in

24  determining RFC based on the information in the case record.  *Burch v. Barnhart*, 400 F.3d 676,

25  683 (9th Cir. 2005).

26       Here, the ALJ determined that Plaintiff's obesity and his heart disease were severe

27  impairments.  AR 42.  The ALJ then moved on to the RFC analysis, and thoroughly reviewed the

28  medical record, including the notations of Plaintiff's obesity.  AR 42-44.  He noted Dr. Gromis'

1  finding that Plaintiff weighed over 350 pounds and that his "major factor" was related to

2  inactivity and morbid obesity, rather than a cardiac impairment.  AR 43.  He also noted Dr.

3  Desai's finding that Plaintiff's morbid obesity aggravates his underlying atherosclerotic heart

4  disease and hypertension.  AR 43.  He reviewed the doctors' suggestions that Plaintiff lose

5  weight, and Plaintiff's testimony that he weighed about 400 pounds.  AR 44.  Despite his

6  impairments, the ALJ determined that Plaintiff retained the RFC to perform a significant number

7  of sedentary positions in the national economy.  AR 46.

8          Contrary to Plaintiff's assertion, the ALJ considered the effects of Plaintiff's obesity.

9  Here, although the record contains evidence of Plaintiff's obesity, there is no evidence that

10 Plaintiff's obesity resulted in more drastic limitations than those imposed by the ALJ.  *Burch*,

11 400 F.3d at 683.  For example, Dr. Gromis, who was aware of Plaintiff's obesity, found that

12 Plaintiff was not disabled and could perform light work activities, but had to avoid more than

13 ordinary amounts of stress.  AR 376.  The ALJ gave Plaintiff the benefit of the doubt by

14 restricting him to sedentary work.

15 C.    The Listings

16         In a similar argument, Plaintiff asserts that the ALJ failed to provide rationale for his

17 finding that Plaintiff's obesity and heart disease did not meet, equal, or approach the level of

18 severity discussed in the applicable section of the Listing of Impairments.  AR 42.  Plaintiff also

19 claims that he was "precluded" from developing the effect of severe obesity on his heart

20 condition by the ALJ's rejection of Dr. Desai's opinion and the ALJ's failure to call a Medical

21 Advisor.  In his reply, however, Plaintiff states that he makes no attempt to establish that his

22 obesity and heart disease meet or equal a listing but instead relies on SSR 02-01p's directive to

23 evaluate each case based on the information in the case record.  If this is Plaintiff's sole

24 argument, then the above section addresses it.  However, in the event Plaintiff intended to state

25 his argument as described in his opening brief, the following discussion is necessary.

26         The listings of impairments describe impairments "that are considered severe enough to

27 prevent an adult from doing any gainful activity."  20 C.F.R. § 416.925(a).  Most of these

28 impairments are permanent or expected to result in death.  *Id.*  For all other impairments, the

evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months.  *Id.*  If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry.  20 C.F.R. § 416.920(d).

To demonstrate that an impairment matches a listed impairment, the claimant must show that the impairment meets all of the medical criteria in a Listing.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.*  To "equal" a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment."  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1526(a), 416.926(a).  Under the law of this circuit, "[i]t is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments."  *Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.1990).

As obesity is not a separately listed impairment, a claimant will be deemed to meet the requirements if "there is an impairment that, in combination with obesity, meets the requirements of a listing."  SSR 02-01p.  Equivalence may also be determined if a claimant has multiple impairments, including obesity, none of which meets the listing requirement, but which when viewed in the aggregate are equivalent to a listed impairment.  *Id.*  However, an ALJ will not make assumptions about the severity or functional effects of obesity combined with other impairments, and will evaluate each case based on the information in the case record.  *Id.*; *Burch*, 400 F.3d at 682.

In *Burch*, the ALJ did not find that the claimant's obesity, in combination with her other impairments, met a Listing.  *Burch*, 400 F.3f at 682-683.  The court held that this was not reversible error, as it is the claimant's burden to prove that she has an impairment that meets or equals the criteria of an impairment in the Listings.  *Id.* at 683.  An "ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."  *Id.*

1    Here, as in *Burch*, Plaintiff has not met his burden of demonstrating that his obesity, in

2    combination with his other impairments, meets or equals a listing.  Insofar as Plaintiff claims that

3    he was "precluded" from demonstrating this, his argument fails.  The ALJ's rejection of Dr.

4    Desai's opinion was just that- a rejection.  Plaintiff was able to present the opinion, subject to the

5    ALJ's acceptance or rejection.  Insofar as Plaintiff contends that he was precluded because the

6    ALJ failed to call a medical advisor, the ALJ was not obligated to call an advisor because

7    Plaintiff did not present evidence that he met or equaled a Listing.  *Marcia v. Sullivan*, 900 F.2d

8    172, 176 (9th Cir. 1990) (where claimant presented evidence in an effort to establish equivalence,

9    the ALJ must explain adequately his evaluation of alternative tests and the combined effects of

10   the impairments).

11   D.    Developing the Issues

12   _____Plaintiff argues that the ALJ had a duty under 20 C.F.R. § 404.1512(e) to recontact Dr.

13   Desai instead of rejecting his January 2002, Functional Capacity Evaluation.

14       20 C.F.R. § 404.1521(e) provides:

15       (e) Recontacting medical sources. When the evidence we receive from your treating
         physician or psychologist or other medical source is inadequate for us to determine
16       whether you are disabled, we will need additional information to reach a determination or
         a decision. To obtain the information, we will take the following actions.
17

18       (1) We will first recontact your treating physician or psychologist or other medical source
         to determine whether the additional information we need is readily available. We will
19       seek additional evidence or clarification from your medical source when the report from
         your medical source contains a conflict or ambiguity that must be resolved, the report
20       does not contain all the necessary information, or does not appear to be based on
         medically acceptable clinical and laboratory diagnostic techniques. We may do this by
21       requesting copies of your medical source's records, a new report, or a more detailed report
         from your medical source, including your treating source, or by telephoning your medical
22       source. In every instance where medical evidence is obtained over the telephone, the
         telephone report will be sent to the source for review, signature and return.

23       Pursuant to the language of the regulation, a medical source will only be recontacted

24   where the evidence "is inadequate for us to determine whether you are disabled . . ."  In *Thomas*

25   *v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2001), the Ninth Circuit reiterated that the "requirement

26   for additional information is triggered only when the evidence from the treating medical source is

27   inadequate to make a determination as to the claimant's disability."

28

1      Here, the ALJ did not make a determination that Dr. Desai's Functional Capacity

2  Assessment was inadequate to make a determination as to Plaintiff's disability.  Instead, the ALJ

3  determined that the report was not entitled to significant evidentiary weight because there was no

4  indication that Dr. Desai "used the legal standards and considerations as prescribed by the Social

5  Security Act in his assessments of claimant's condition."  AR 43.  He continued, "[m]oreover,

6  merely checking a form without supporting documentation (especially since claimant had not

7  been seen for six months) does not present a persuasive argument and accordingly is not binding

8  upon the undersigned or the Social Security Administration. . ."  AR 43.

9      The ALJ was entitled to give Dr. Desai's evaluation little weight.  His assessment was

10  little more than a one page, check-the-box form.  AR 498.  It did not include any support for the

11  imposed limitations, nor did it even include a description of Plaintiff's impairments.  AR 498.

12  Additionally, as the ALJ points out, Dr. Desai had not seen Plaintiff for a number of months prior

13  to completing the assessment.  A brief and conclusionary form opinion which lacks supporting

14  clinical findings is a legitimate reason to reject a treating physician's conclusion.  *Magallenes v.*

15  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Plaintiff contends that the opinion was set forth on an

16  "official" form, but this does not change the nature of the evaluation.

17      In a related argument, Plaintiff contends that the ALJ should have recontacted Drs.

18  Sandhu and Behl pursuant to 20 C.F.R. § 404.1512(e), instead of rejecting their opinions.

19  However, as the court explained in *Thomas*, the duty to recontact applies only to treating sources.

20  *Thomas*, 278 F.3d at 958.  Drs. Sandhu and Behl were consultive, examining sources.

21  E.    <u>Plaintiff's Credibility</u>

22      Next, Plaintiff argues that the ALJ failed to set forth adequate reasons for rejecting his

23  subjective complaints.

24      The ALJ is required to make specific findings assessing the credibility of plaintiff's

25  subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  In rejecting

26  the complainant's testimony, "the ALJ must identify what testimony is not credible and what

27  evidence undermines the claimant's complaints."  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

28  1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.

1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).  "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimaint's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

The ALJ set forth a thorough credibility analysis.  Plaintiff first contends that the ALJ did not state what testimony he found not credible.  However, the ALJ explained that he doubted the severity of Plaintiff's impairments, questioned his testimony about his driving habits, characterized his testimony about his daily activities as "vague," and questioned his testimony that he leads a sheltered life. AR 45.

Plaintiff next argues that the ALJ's areas of inquiry were improper.  The ALJ noted that Plaintiff failed to stop smoking and lose weight, drove to the hearing without problems, performed numerous daily activities, remained on the same medications, and sat for 50 minutes at the hearing without difficulty.  AR 45.

Plaintiff first contends that the ALJ improperly considered Plaintiff's failure to stop smoking and lose weight because his doctors' recommendations to do so were not necessarily treatment plans.  For purposes of the credibility determination, it is irrelevant whether the suggestions were part of a treatment plan.  The ALJ may consider an unexplained or inadequately explained failure to seek or follow treatment. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).  Here, although Plaintiff testified that he had been smoke-free for two months, Dr. Desai had advised him to stop smoking as early as August 1999.  AR 381.  Similarly, there are numerous treating source suggestions that Plaintiff lose weight, at least as far back as October

17

1   1999.  AR 317, 383, 500.  Although the ALJ may have theorized a bit too much as to why

2   Plaintiff did not lose weight[4], he was entitled to consider Plaintiff's noncompliance in assessing

3   his credibility.

4          Plaintiff next contends that the ALJ erred by considering the fact that Plaintiff drove to

5   the hearing.  The ALJ explained that although Plaintiff's counsel argued in his written opening

6   statement that Plaintiff does not enjoy driving and attempts to avoid it because it may bring on

7   significant chest pain, Plaintiff "drove to the hearing with no reported difficulty."  AR 45, 237.

8   As Plaintiff points out, though, the ALJ only asked Plaintiff if he drove himself to the hearing, to

9   which he responded, "Yes."  AR 559.  The ALJ did not further inquire as to how he felt during or

10  after the drive, why he drove, or how far he had to travel.  Without asking for more detail, it

11  seems a leap in logic to conclude that Plaintiff had no reported difficulty with the drive simply

12  because he arrived at his destination, especially where Plaintiff wasn't given an opportunity to

13  "report" any difficulty.  Although this may have been an improper conclusion, it does not change

14  the overall correctness of the ALJ's credibility determination, as discussed below.  *Batson v.*

15  *Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even

16  though one reason may have been in error).

17         Plaintiff's claim that the ALJ improperly considered his daily activities is without merit.

18  The ALJ looked to Plaintiff's Daily Activities Questionnaire because his testimony was vague.

19  AR 45.  Plaintiff stated that he was able to care for his personal needs, shops with his wife for

20  year plants, tools, etc., mowed his grass, trimmed roses and shrubs, fixed minor things around the

21  house, visited with family and friends once a week, and walked 3/4 of a block before resting.  AR

22  45.  The ALJ also found relevant Plaintiff's ability to go camping in August 2003.  AR 45.  The

23  ALJ concluded that this evidence negated Plaintiff's claim that he led a sheltered, quiet life.  AR

24  45. Plaintiff's daily activities, including his ability to go camping a month before the hearing,

25

26  _____

27        [4] After determining that Plaintiff had not seriously tried to lose weight, the ALJ states, "Perhaps claimant's
    weight had not become severe enough to motivate him to make the necessary lifestyle changes that would reduce his
28  risk factors and promote better health, or maybe he simply did not really wish his condition to improve and felt he
    would benefit in some way from characterizing himself as disabled."  AR 45.

1   were properly considered in analyzing his credibility.  *Fair v. Bowen*, 885 F.2d 597, 603-604 (9th

2   Cir. 1991).

3          The ALJ next noted that Plaintiff's medications had remained unchanged over the past

4   three years, which suggests that his condition has been adequately controlled.  AR 45.  Plaintiff

5   contends that this was error because a "stable condition" does not mean that claimant can work.

6   While this may be true, the ALJ did not use Plaintiff's "stable condition" to determine that he

7   could work.  Rather, the ALJ properly noted that Plaintiff's condition was controlled with

8   medication in the context of discrediting his subjective complaints.  *See Fair v. Bowen*, 885 F.2d

9   at 603.

10          Finally, the ALJ explained that Plaintiff was "observed to sit for 50 minutes with no

11   reported difficulty, i.e., until is was mentioned by his attorney and claimant said he was unable to

12   sit for one hour without elevating his feet."  AR 45.  The ALJ further explained, "[i]n making

13   this observation the undersigned is not basing his entire determination upon claimant's

14   appearance at the hearing alone.  This is but one factor which he has considered along with all of

15   the other evidence of record."  AR 45.  Plaintiff argues that the ALJ made no attempt to discover

16   why Plaintiff sat for 50 minutes, and submits that it was because he wanted to get the hearing

17   over with.  Despite Plaintiff's contention, the ALJ's observation was proper because, as he noted,

18   it was not his only basis for determining Plaintiff's credibility.  *See Morgan v. Commissioner*,

19   169 F.3d 595, 600 (9th Cir. 1999) (observations of the ALJ are acceptable as long as they are not

20   the sole basis of the credibility determination).  Indeed, it was suspect that Plaintiff sat without a

21   problem until his attorney asked him how long he could sit without elevating his foot, to which

22   Plaintiff replied, "It's starting to get to me sitting here.  Okay.  Now I need to move around."  AR

23   584.

24          The ALJ's credibility determination was supported by substantial evidence.  Although

25   one aspect of his discussion was questionable, it does not change this conclusion.  The AL set

26   forth specific findings to permit this Court to conclude that the ALJ did not arbitrarily discredit

27   Plaintiff's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

28

F.   Treating Physician Opinion

_____Plaintiff contends that the ALJ improperly rejected Dr. Desai's August 28, 2003, opinion that Plaintiff was disabled and should be granted disability benefits.

It is true that the medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985).  Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual.  However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751, and *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. § 416.928.

Here, the ALJ explained that he rejected Dr. Desai's declaration of disability because it was an opinion reserved to the Commissioner and was not entitled to controlling weight or special significance.  This is correct.  Dr. Desai's statement that Plaintiff was disabled and should be granted disability benefits was not a medical statement, but a legal conclusion reserved exclusively for the Commissioner.  20 C.F.R. § 404.1527(e)(2)(2004); SSR 96-5p.

Plaintiff also faults the ALJ for rejecting Dr. Desai's opinion and the opinions of consulting cardiologists Dr. Behl and Dr. Sandhu and instead relying solely on a May 31, 2001, report of an unnamed State Agency physician.  Contrary to Plaintiff's characterization, however, the ALJ did not rely solely on the State Agency physician.  Rather, he gave controlling weight to Dr. Desai's opinion that Plaintiff's obesity affects his condition, and explained that Dr. Desai's last progress note in May 2001 indicated that Plaintiff was feeling better.  AR 45.  He also gave considerable weight to the opinion of Dr. Gromis, a board-certified internist who examined and evaluated Plaintiff in April 2000.  AR 337.  The ALJ explained that Dr. Gromis conducted a thorough examination and provided a detailed report explaining the limitations he imposed on

1   Plaintiff, including the extraordinary amount of stress cause by Plaintiff's past job. AR 46. *See*

2   *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultive examiner's opinion is

3   substantial evidence). The ALJ also noted Plaintiff's most recent treadmill test in April 2003,

4   which was negative for angina and ischemia. AR 46. Taking this evidence into consideration,

5   the ALJ concurred with the State Agency physician and found that Plaintiff retained the RFC to

6   engage in sedentary work, while avoiding high stress situations. AR 46.

7        Therefore, contrary to Plaintiff's argument, the ALJ did not rely *solely* on the State

8   Agency physician's finding. He set forth the medical evidence in support of his finding, relied

9   on the treating physician's opinion as to Plaintiff's obesity, and gave the consultive examiner's

10  limitations "considerable weight." The ALJ's findings were therefore supported by substantial

11  evidence. *See Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989) (upholding the

12  Commissioner's decision to reject the opinion of a treating or examining physician, based in part

13  on the testimony of a nonexamining medical advisor, where the ALJ did not rely on the

14  nonexamining physician's testimony alone to reject the opinions of treating physicians).

15       To the extent that Plaintiff contends that the rejection of the opinions of consultive

16  examiners Drs. Behl and Sandhu were improperly rejected, his argument fails. The opinion of an

17  examining doctor, even if contradicted by another doctor, can only be rejected for specific and

18  legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*,

19  53 F.3d 1035, 1043 (9th Cir.1995). Here, the ALJ explained that Dr. Behl's findings were

20  entitled to little weight because his assessment was based primarily on Plaintiff's subjective

21  complaints, rather than on his own clinical findings, which were essentially within normal limits.

22  AR 44. A lack of supporting clinical findings is a valid reason for rejecting a treating physician's

23  opinion. *Magallenes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). Similarly, the ALJ gave little

24  weight to Dr. Sandhu's opinion because his recommendation of disability was not consistent with

25  the objective findings on examination, which were within normal limits. *Id.*

26  ///

27  ///

28  ///

G.    Use of the Grids

_____Finally, Plaintiff argues that the ALJ should have relied upon the testimony of a VE rather than the Grids.  He claims that the ALJ improperly relied upon the Grids because Plaintiff had the non-exertional limitations of pain and fatigue.

While significant non-exertional impairments may make reliance on the grids inappropriate, the mere allegation of a non-exertional limitation does not automatically preclude the application of the grids.  *Desrosiers v. Secretary of Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988).  If the ALJ finds that a non-exertional limitation exists, and that it significantly affects the range of work described in the grids, use of the grids would be inappropriate and a vocational expert would be needed to describe what, if any, jobs existed in the national economy that plaintiff would be able to perform.  *Id.*

Here, the ALJ, as described above, properly rejected Plaintiff's subjective complaints, including his complaints of pain and fatigue.  The ALJ therefore was not required to question a VE about these allegations of non-exertional limitations.  The only non-exertional limitation found was the preclusion from sedentary positions involving high stress situations.  AR 46.  The ALJ found that such a limitation did not significantly erode the occupational base of jobs that existed in the national economy.  AR 46.  Having made this finding, the ALJ was entitled to rely on the Grids to determine that Plaintiff was not disabled.  *Desrosiers,*  846 F.2d at 577.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Robert J. Dustman.

IT IS SO ORDERED.

**Dated:    July 13, 2005**              _____ **/s/ Dennis L. Beck** _____
3b142a                                              UNITED STATES MAGISTRATE JUDGE